219 N.J. Super. 170 (1987)
530 A.2d 37
NORWOOD L. WHITE, APPELLANT,
v.
WILLIAM H. FAUVER, COMMISSIONER, NEW JERSEY DEPARTMENT OF CORRECTIONS, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Submitted March 31, 1987.
Decided July 6, 1987.
*172 Before Judges MICHELS, O'BRIEN and LANDAU.
Alfred A. Slocum, Public Defender of New Jersey, attorney for appellant (T. Gary Mitchell, Deputy Public Defender, on the brief).
*173 W. Cary Edwards, Attorney General of New Jersey, attorney for respondent (Jeffrey A. Bartolino, Deputy Attorney General, on the brief).
The opinion of the court was delivered by O'BRIEN, J.A.D.
Norwood L. White (appellant), an inmate in the State prison system, appeals from a final decision of the Department of Corrections (DOC) which affirms the denial of appellant's appeal from the Classification Committee's decision to reduce his custody status. We affirm.
Appellant is serving an aggregate term of 35 to 53 1/2 years in State prison for a series of offenses, including a term of 30 years to the Adult Diagnostic & Treatment Center (ADTC) for rape. He was initially received in the State prison system on April 1, 1975. On May 21, 1982, he was transferred from the Vroom Readjustment Unit at Trenton State Prison to ADTC at his own request. Upon his arrival at ADTC, he was classified as maximum custody. However, on September 16, 1982, he was approved for "gang minimum" custody status.[1]
*174 Inmates classified as minimum security and who are considered sufficiently trustworthy to be employed in honor camps, farms or details, shall receive further remission of time from their sentences at the rate of three days per month for the first year of such employment and five days per month for the second and each subsequent year of such employment. N.J.S.A. 30:4-92. It is not disputed that while classified as "gang minimum" custody appellant became entitled to, and received, all benefits accompanying that status, including remission of time from his sentence provided for by the statute.
On August 4, 1984, an inmate serving a life sentence for murder escaped from the Minimum Security Rahway Camp which is a housing facility adjoining Rahway State Prison and located in a densely populated community. ADTC is located in the immediate vicinity of Rahway State Prison. As a result of that escape, the DOC reassessed its policy concerning inmate eligibility for reduced custody at both ADTC and Rahway State Prison.[2] A telephone directive was given by Gary J. Hilton, Assistant Commissioner of the DOC, to the Acting Superintendent of ADTC, which ordered a Special Classification Review Committee to evaluate all ADTC inmates who were either already assigned to, or on a waiting list for, reduced custody status. Mr. Hilton suggested that a "conservative outlook" be taken by the committee and that each inmate's criminal offense *175 history be particularly scrutinized before he is afforded the privilege of a reduced custody status.[3]
On August 9 and 10, 1984, the Classification Committee met and conducted an in-depth review of all ADTC inmates assigned to a reduced custody status. As a result, 28 inmates reverted to maximum custody from either "gang" or "full minimum" custody status. Two inmates reverted to "gang minimum" from "full minimum" status, and four inmates, including appellant, temporarily reverted to maximum custody pending further Classification Committee review. An additional 27 inmates retained their reduced custody status.
Appellant was notified by memo dated August 10, 1984 from Grace Matava, Senior Classification Officer, that the result of the Classification Committee's review of his case was as follows:
Revert to maximum custody status pending clarification of your sentence. You may continue to work in your present assignment until your case is reviewed again by the Classification Committee.
After an exchange of correspondence and several meetings between Ms. Matava and appellant, his parole eligibility date was finally ascertained and requested status review was heard by the Classification Committee. As reported in a memo from Ms. Matava to appellant dated December 6, 1984, the Classification Committee's decision was:
Confirm removal from gang minimum status.
Reasons for the decision are:
1. extensive offense history
2. serious nature of present offense
3. past community failures.
The decision of the assistant superintendent of ADTC on appellant's appeal, dated December 20, 1984, reads as follows:
Per institutional policy, your appeal of the Classification Committee's above action was forwarded to me for adjudication.
I am denying your appeal of the Classification Committee's decision of December 6, 1984, based on the following.

*176 The Classification Committee which you appeared before and that rendered the decision denying the restoration of your minimum custody status is composed of members with many years of correctional experience. They are cognizant of your `due process rights,' evidenced by your appearance before the Committee. Their decision in denying your minimum custody was based on your criminal history, length of sentence, community failure, which are all valid reasons to deny reduction in custody. The fact that a review conducted of all inmates in minimum custody was initiated by Assistant Commissioner Gary Hilton per telephone, does not negate the legitimacy of the examinations of those inmates classified as minimum. This institution's primary responsibility is the safety and well being of the community.
In summation, a reduction in custody status is a privilege not a right. No Classification Committee is required to automatically grant a reduction in custody to every inmate who is eligible for consideration....
Notwithstanding that there is no provision for appeal of Classification Committee decisions above the institutional level, on appellant's appeal, the Assistant Commissioner of the DOC reviewed the committee's action and concluded:
As a result of this general review and the more conservative posture now required for granting reduced custody status, it appears that the Classification Committee acted properly in rescinding your minimum status for the stated reasons.
We would, therefore, support former Superintendent Kemp's denial of your appeal for the reasons set forth in his letter of December 20, 1984 to you.
On this appeal, defendant makes the following arguments:
I. THE CORRECTIONS DEPARTMENT'S REVOCATION OF APPELLANT'S REDUCED CUSTODY STATUS FAILED TO FOLLOW DEPARTMENT STANDARDS.
II. REVOCATION OF APPELLANT'S REDUCED CUSTODY STATUS RAISES A PROTECTIBLE LIBERTY INTEREST AND TO AFFORD DUE PROCESS THE DETERMINATION MUST ADHERE TO THE CRITERIA SPECIFIED FOR SUCH DECISIONS IN DEPARTMENT STANDARDS.
III. THE AUGUST 8, 1984 IMPOSITION OF NEW POLICIES AND CRITERIA FOR THE REVOCATION OF REDUCED CUSTODY STATUS ON ADTC RESIDENTS ARE INVALID UNDER THE NEW JERSEY ADMINISTRATIVE PROCEDURE ACT'S REQUIREMENTS FOR RULE-MAKING TO WHICH THE DEPARTMENT OF CORRECTIONS IS SUBJECT.
IV. THE AUGUST 8 DETERMINATION OF ASSISTANT COMMISSIONER HILTON AND THE FINAL DECISION REVOKING APPELLANT'S *177 REDUCED CUSTODY STATUS VIOLATED CONSTITUTIONAL PROTECTIONS AGAINST EX POST FACTO LAWS.
The DOC Standards in effect at the time appellant's custody status was increased were followed by the Classification Committee. We note that pursuant to standard 853.4, the Classification Committee is the only body authorized to reduce an inmate's custody status. However, in an emergency situation or when additional information is received which negatively affects an inmate's suitability to remain in reduced custody (i.e., parole board decisions, escape plans, etc.), the inmate's custody level can be increased temporarily by order of the superintendent, assistant superintendent, or director of custody operations. Such changes must nevertheless be reviewed and approved by the institution Classification Committee at its next regularly scheduled meeting. Standard 853.4B.
The Classification Committee reviewed appellant's custody status on August 9 or 10, 1984 and increased it to maximum custody pending clarification of his sentence. Standard 853.4B clearly provides that reductions in inmate's custody levels shall be made by the institutional Classification Committee, although, as noted in Jenkins v. Fauver, see footnote 2, there were no specific guidelines for the institutional Classification Committee to follow in increasing an inmate's custody level. While we agree with that decision that a change in an individual's classification must be for cause and not arbitrary, we conclude that the change in appellant's status was for cause.
We recognize appellant's contention that the reasons given for increasing his classification to maximum security from "gang minimum" were in existence at the time the Classification Committee reduced his status to gang minimum, and that appellant did nothing in the interim which would warrant increasing his custody status as an individual inmate. However, it is evident that after the escape of a prisoner on minimum security, the responsibility of the DOC to the public mandated a *178 review and reevaluation of those prisoners on, or eligible for, reduced custody status. The suggestion that the review be with a more "conservative outlook or posture" suggests that the earlier evaluations for a change in custody status were more liberal in their approach. Thus, it was not any action by appellant that resulted in his increase in custody status, but rather a change in "outlook or posture" in determining the status classification. Under the more liberal approach, appellant apparently met the classification standard, whereas, under the more conservative approach, he did not. We are satisfied that the change in approach was dictated by the escape of an inmate serving a term for murder and the necessity to consider the safety of the public. In addition, as observed by Mr. Hilton, it is necessary to consider the public's perception of what is safe because public confidence that its safety is not in jeopardy is an essential component in any departmental program, such as minimum security housing or work release, which attempts to rehabilitate the prisoner by means of supervised interaction with the community.
We conclude that appellant had no constitutionally protected liberty interest in his "gang minimum" status. Liberty interest protected by the Fourteenth Amendment may arise from two sources  the Due Process Clause itself and the laws of the State. Hewitt v. Helms, 459 U.S. 460, 466, 103 S.Ct. 864, 868-69, 74 L.Ed.2d 675, 685 (1983). "As long as the conditions or degree of confinement to which the prisoner is subjected are within the sentence imposed upon him and are not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." Montanye v. Haymes, 427 U.S. 236, 242, 96 S.Ct. 2543, 2547, 49 L.Ed.2d 466, 471 (1976). Since appellant's maximum custody status is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause itself is not the source of the liberty *179 interest appellant claims to have. But see Vitek v. Jones, 445 U.S. 480, 493-494, 100 S.Ct. 1254, 1264, 63 L.Ed.2d 552 (1980). (An involuntary transfer of a state prisoner to a state mental hospital directly implicates the due process clause because involuntary commitment to a mental institution is not within the range of conditions of confinement to which a prison sentence subjects an individual.)
A state may create a liberty interest protectable by the due process clause through its enactment of certain statutory or regulatory measures. See Hewitt v. Helms, supra, 459 U.S. at 469, 103 S.Ct. at 870. However, if the decision maker is not required to base its decision on objective and defined criteria, but instead can deny the requested relief for any constitutionally permissible reason or for no reason at all, the State has not created a constitutionally protected liberty interest. Olim v. Wakinekona, 461 U.S. 238, 249, 103 S.Ct. 1741, 1747, 75 L.Ed.2d 813, 823 (1983). DOC Standard 853.4B places no limitations on the Classification Committee's discretion to increase an inmate's reduced custody status.[4] To obtain a *180 protectable right, a person must have more than a unilateral expectation of it. Rather, he must have a legitimate claim of entitlement to it. Greenholtz v. Nebraska Penal Inmates, 442 U.S. 1, 7, 99 S.Ct. 2100, 2103-04, 60 L.Ed.2d 668, 675 (1979), citing Board of Regents v. Roth, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548, 561 (1972).
Likewise, appellant's argument that he acquired a protected liberty interest by virtue of the additional remission credits to which his reduced custody status entitled him pursuant to N.J.S.A. 30:4-92 is without merit. The Supreme Court has rejected the notion that any "grievous loss" visited upon a person by the state is sufficient to invoke the procedural protections of the Due Process Clause. See Meachum v. Fano, 427 U.S. 215, 224, 96 S.Ct. 2532, 2538, 49 L.Ed.2d 451, 458 (1976), rehearing den. 429 U.S. 873, 97 S.Ct. 191, 50 L.Ed.2d 155 (1976).
Although appellant did not have a protected liberty interest in his reduced custody status, New Jersey courts have not been satisfied with enforcement of naked constitutional rights in their function of review of the action of administrative agencies, but have gone further to strike down arbitrary action and administrative abuse and to ensure procedural fairness in the administrative process. New Jersey Parole Bd. v. Byrne, 93 N.J. 192, 207 (1983); Avant v. Clifford, 67 N.J. 496, 520 (1975). Due process is flexible and calls for such procedural protections as the particular situation demands. Mathews v. Eldridge, 424 U.S. 319, 334, 96 S.Ct. 893, 902, 47 L.Ed.2d 18, 33 (1976).
We are satisfied that any due process to which appellant was entitled was accorded to him. Although he did not receive preliminary notice of the anticipated increase in his custody status, that increase was temporary until his sentence was *181 clarified. Thereafter, he had several meetings with the senior classification officer and appeared before the Classification Committee prior to its action. As noted, the action was not taken as a result of any conduct by appellant for which he could offer some explanation. We recognize appellant's argument that the change in his custody status was based upon actions of his, in part, prior to his incarceration, about which he may have been able to offer some explanation in mitigation.
In short, we conclude appellant had no protectable liberty interest, and to the extent that we are required to consider whether the procedures employed were "fair" and "right" in relation to the purported deprivation, Avant v. Clifford, supra, we are satisfied that appellant received "due process."
Appellant's contention that the oral directive of August 8, 1984 was invalid under the Administrative Procedure Act and constituted an ex post facto law is totally without merit. R. 2:11-3(e)(1)(D). The directive of August 8 clearly was not a "rule." Appellant's entitlement to remission of time pursuant to N.J.S.A. 30:4-92 was based upon his status. Although the decision of the Classification Committee to increase his custody status had the incidental result of depriving him of these additional remission credits, this did not constitute a violation of the ex post facto clause since it was not the enactment of a law or rule, but merely a review of the application of an existing rule. The ex post facto clauses of the Federal and State Constitutions do not apply to procedural changes even though they may disadvantage the offender, State v. T.P.M., 189 N.J. Super. 360, 367 (App.Div. 1983), although a procedural form will not protect substantive changes. Ibid. Reconsideration of the application of the rule was purely procedural.
Affirmed.
NOTES
[1] There are three levels of custody which are described in DOC Standard 853.3 as follows:

A. Maximum Custody
Inmates classified as maximum custody shall be assigned to activities within the confines of the security of the institution under continuous supervision.
B. Gang Minimum or In-And-Out
Inmates classified as gang minimum or in-and-out shall be assigned to activities or jobs which routinely require them to move outside the security of the institution, on institutional grounds, and within eyesight of a correction officer, civilian instructor, or other employee authorized to supervise them.
Unless otherwise specified, ... the successful completion of a period of time in gang minimum or in-and-out shall be a prerequisite for full minimum custody status. The amount of time shall be at the discretion of the Institutional Classification Committee. [Emphasis original.]
C. Full Minimum
Inmates classified as full minimum must be assigned to either: (1) work details, jobs, or programs outside the main institution, on or off institutional grounds, with minimal supervision, or (2) a satellite unit or minimum security trailer unit, or (3) both (1) and (2).
Full minimum custody status shall be a prerequisite for participation in all community release programs.
[2] In an unpublished Appellate Division opinion it is stated that on September 23, 1984 another inmate escaped. See Jenkins, et al. v. Fauver, 219 N.J. Super. 420 (App.Div. 1986), certif. granted 105 N.J. 547-548 (1986).
[3] This oral directive was never reduced to writing.
[4] Standard 853 was revised on April 11, 1983, and again on January 31, 1984, and is now embodied in N.J.A.C. 10A:9-4.5(f), effective January 20, 1987, see 18 N.J.R. 1649(a), 19 N.J.R. 218(a), which now provides:

An inmate who has been granted reduced custody may have his or her custody increased for any of the following reasons, subject to confirmation by the Classification Committee:
1. On recommendation of the disciplinary hearing officer in connection with disciplinary actions;
2. Upon receipt of a non-permissive detainer;
3. Upon receipt of credible, reliable information from official authorities or informants, that the inmate may be an escape risk;
4. Failure of the inmate to adjust to the social or programmatic needs of the reduced custody unit;
5. Serious health problems as determined by the correctional facility physician; and/or
6. Any reason which, in the opinion of the Superintendent and Classification Committee, relates to the best interests of the inmate or the safe and orderly operation of the correctional facility.