**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4552-17T2

RONALD SMITH,

      Appellant,

v.

NEW JERSEY DEPARTMENT
OF CORRECTIONS,

      Respondent.

_____

Submitted September 19, 2019 – Decided November 4, 2019

Before Judges Suter and DeAlmeida.

On appeal from the New Jersey Department of Corrections.

Ronald Smith, appellant pro se.

Gurbir S. Grewal, Attorney General, attorney for respondent (Melissa Dutton Schaffer, Assistant Attorney General, of counsel; Stephanie Renee Dugger, Deputy Attorney General, on the brief).

PER CURIAM

Ronald Smith appeals the final agency decision of the New Jersey Department of Corrections (the DOC) that denied his request for a reduction in custody status from gang minimum custody status to full minimum custody status. We reverse and remand for consideration of applicable regulatory factors and for the DOC to make appropriate findings and conclusions.

I.

Smith was convicted by a jury in March 2017 of the shooting death of Bruce Miles, Jr. and sentenced in May 2017. He is an inmate at South Woods State Prison (SWSP) where he is serving an aggregate eight-year term, subject to an eighty-five percent period of parole ineligibility, for second degree manslaughter committed in the heat of passion, N.J.S.A. 2C:11-4(b)(2), and unlawful possession of a handgun, N.J.S.A. 2C:39-5(b). In January 2018, the SWSP Institutional Classification Committee (ICC)[1] denied Smith's request to reduce his custody classification status from gang minimum custody status[2] to

[1] The ICC is responsible to "[r]eview . . . inmate applications for change in custody status . . . ." N.J.A.C. 10A:9-3.1(a)(3). It is comprised of the administrator of the institution, director of education, social work supervisor, correction major, supervising classification officer and other staff or designees. N.J.A.C. 10A:9-3.2(a)(1) to (5).

[2] An inmate who is classified in gang minimum custody "may be assigned to activities or jobs which routinely require them to move outside the security

full minimum custody status.[3] The SWSP Associate Administrator and the DOC Central Office Classification Committee (Central Office committee) upheld the denial. Subsequently, Smith asked to "defer" this request in order to remain in the "building trades program."

The next month, Smith submitted another request for reduction to full minimum custody status. The ICC approved this on February 27, 2018, but the Associate Administrator denied Smith's request. The reason given was: "[c]ircumstances of present offense show extreme violence and a blatant disregard for human life. After victim was down, Smith fired several more shots." The Associate Administrator's decision was reviewed by the Central Office committee, which agreed the denial was "appropriate [and] supported." Although Smith filed an inmate grievance, the classification decision was not changed.

---

perimeter of the correctional facility, but on the grounds of the facility and under continuous supervision of a custody staff member, civilian instructor or other employee authorized to supervise inmates." N.J.A.C. 10A:9-4.3(d).

[3] An inmate who is assigned to full minimum custody status can be assigned to "1. Work details, jobs or programs outside the main correctional facility, (on or off the grounds of the facility) with minimal supervision; and/or 2. A satellite unit or minimum security unit." N.J.A.C. 10A:9-4.3(e).

A-4552-17T2

Smith appealed. At the DOC's request, we remanded the case on November 14, 2018, for the DOC to "clarify and further explain" its decision and retained jurisdiction. Following the remand, SWSP's Associate Administrator certified the procedures followed in this case conformed with the DOC's "operational procedures." Specifically, the ICC's recommendation was reviewed by the Administrator's designee, who "has the authority to review and approve/disapprove any custody status recommended by the [ICC]." That "decision must be based on criteria articulated in the regulations and internal management procedures, as well as any potential safety and security risks." Thereafter, any denial of full minimum custody by the Administrator's designee is reviewed by the Central Office committee for approval or denial.

The Associate Administrator explained the denial of Smith's request was based on the "nature and circumstances" of the underlying offense. He had relied on the pre-sentence investigative report. The underlying crime showed "an extreme level of violence and a blatant disregard for human life."

> Smith arrived at a residence by car, exited his vehicle, walked up the driveway and moments later began to fight with the victim, a [twenty-eight]-year-old male. In progress at the residence was a graduation cookout for a pre-school child who was stated to be Smith's daughter. Smith punched the victim and they began fighting. Smith then walked away from the fight and proceeded to the trunk of his car where he retrieved a

4

handgun and proceeded back up the driveway toward the victim and began shooting. After Smith shot the victim several times (while the victim had his hands up), the victim began running up the driveway towards the garage but collapsed on the ground. Smith then proceeded to walk up to the victim while he was down on the ground, stand over him, and shoot him approximately four more times at point blank range. There were direct witnesses to the crime. Smith fled the scene and left the victim to die in front of those witnesses.

After our remand, Smith's application was reviewed. The ICC again recommended full minimum custody, but the Associate Administrator denied Smith's request to reduce his custody status. He cited to the way the shooting occurred, which showed a "blatant disregard for human life." The Central Office committee approved the denial.

In February 2019, the DOC "implement[ed] a rule exemption procedure to make clear that the Administrator or designee has the authority to review and approve/disapprove the ICC recommendations as to custody status, and that any denials of [f]ull [m]inimum are reviewed and approved/disapproved by Central Office [committee]."[4] The Associate Administrator certified the review

---

[4] In <u>In re N.J.A.C. 7:1B-1.1 et seq.</u>, 431 N.J. Super. 100, 124 (App. Div. 2013), we observed that the waiver of a regulation must be accomplished through a duly enacted regulation. Under DOC regulations, the "Commissioner may exempt a correctional facility, community program or operational unit from

procedures "are of benefit to the inmate and to society in general." He advised that the DOC intended to commence rulemaking procedures to codify these changes in the custody status regulations.

On appeal, petitioner raises the following issues:

> POINT 1. THE DECISION OF THE ADMINISTRATOR'S DESIGNEE TO DENY MR. SMITH FULL-MINIMUM STATUS MUST BE REVERSED BECAUSE THE DECISION WAS ARBITRARY AND CAPRICIOUS[.]
>
> POINT 2. THE ADMINISTRATOR'S FAILURE TO ADDRESS THE MERITS OF MR. SMITH'S APPEAL RENDERS THE DECISION ARBITRARY AND CAPRICIOUS[.]

## II.

Review of an administrative agency's final decision is limited. Kadonsky v. Lee, 452 N.J. Super. 198, 201-02 (App. Div. 2017) (citing In re Stallworth, 208 N.J. 182, 194 (2011)). "We will not reverse an agency's judgment unless we find the decision to be 'arbitrary, capricious, or unreasonable, or [] not supported by substantial credible evidence in the record as a whole.'" Id. at 202 (quoting Stallworth, 208 N.J. at 194). We "'defer to the specialized or technical

---

adherence to a rule or may relax certain requirements of a rule for good cause shown in a particular situation or in instances when strict compliance with a rule or all of its requirements would result in . . . [a]n undue hardship, unfairness or injustice." N.J.A.C. 10A:1-2.4(c).

expertise of the agency charged with administration of a regulatory system.'" K.K. v. Div. of Med. Assistance & Health Servs., 453 N.J. Super. 157, 160 (App. Div. 2018) (quoting In re Virtua-West Jersey Hosp., 194 N.J. 413, 422 (2008)). We have noted that the Legislature has provided for the broad exercise of the DOC's discretion in all matters regarding the administration of a prison facility. Russo v. N.J. Dep't of Corr., 324 N.J. Super. 576, 583 (App. Div. 1999).

The "[c]lassification of prisoners and the decision as to what privileges they will receive rests solely within the discretion of the Commissioner of the Department of Corrections." Smith v. N.J. Dep't of Corr., 346 N.J. Super. 24, 30 (App. Div. 2001). An inmate has no liberty interest in a particular custody level. See Hluchan v. Fauver, 480 F. Supp. 103, 108 (D.N.J. 1979). However, the DOC's decision to deny reduced custody status must not be arbitrary, capricious or unreasonable, or unsupported by credible evidence in the record. Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980); White v. Fauver, 219 N.J. Super. 170, 180 (App. Div. 1987), modified sub. nom., Jenkins v. Fauver, 108 N.J. 239, 247 (1987).

Under the DOC regulations, "[c]hanges in inmate custody status within a particular correctional facility shall be made by the [ICC]." N.J.A.C. 10A:9-4.4(a). The ICC applies criteria set forth in the regulations and the "objective

7

classification instrument score . . . to determine whether an inmate is eligible for reduced custody consideration." N.J.A.C. 10A:9-4.1(b).

In considering whether to reduce an inmate's custody status, the ICC "shall take into consideration all relevant factors." N.J.A.C. 10A:9-4.5(a)(1) to (9). The regulation lists nine factors that must be considered, but the ICC is not limited to consideration of those nine factors. Ibid. The ICC is not compelled by these regulatory criteria to reduce an inmate's custody status. N.J.A.C. 10A:9-4.5(c).

Relevant here, if an inmate has been granted a reduced custody status, the inmate's custody status may be increased for five enumerated reasons "subject to confirmation by the I.C.C." N.J.A.C. 10A:9-4.5(e). These include:

> 1. On recommendation of the Disciplinary Hearing Officer in connection with disciplinary actions;
>
> 2. Upon receipt of a non-permissible detainer;
>
> 3. Upon receipt of credible, reliable information from official authorities or informants, that the inmate may be an escape risk;
>
> 4. Failure of the inmate to adjust to the social or programmatic needs of the reduced custody unit; and/or
>
> 5. Any reason which, in the opinion of the Administrator and I.C.C., relates to the best interests of the inmate or the safe, orderly operation of the

correctional facility or the safety of the community or public at large.

[N.J.A.C. 10A:9-4.5(e)(1) to (5).]

Thus, under the regulations, an inmate's custody status may be increased for the safety of the community "in the opinion of the Administrator and I.C.C."

In Smith, 346 N.J. Super. at 27, the inmate was transferred from one institution to another because of a "keep separate" order in his file. He had been classified at full minimum custody status before his transfer, but at the new institution, the ICC placed him in gang minimum custody status. Id. at 28. The administrator of the facility reviewed the ICC's determination, concluding that the inmate did not qualify for full minimum custody status. Ibid. We affirmed the decision but clarified that the administrator and the ICC must take into consideration all of the factors regarding petitioner's status in making its classification decision. Id. at 32. "Neither the nature of an inmate's conviction, except for those offenses specifically excluded for eligibility in N.J.A.C. 10A:9–4.8, nor the location of a correctional facility within a residential area alone, may permanently disqualify an inmate from consideration for 'full minimum custody status.'" Ibid.

In this case, the administrator's decision to deny full minimum was based on the nature and manner the crime was committed. There are a number of

factors under the regulations that the ICC must consider in its classification decision. N.J.A.C. 10A:9-4.5(a) requires the ICC to consider the field account of the present offense, prior criminal record, previous incarcerations, correctional facility adjustment, residential community program adjustment, the objective classification score, reports from professional and custody staff, whether the conviction resulted in a life sentence and "[a]ny reason which, in the opinion of the Administrator and the [ICC] relates to the best interests of the inmate or the safe, orderly operation of the correction facility or the safety of the community or public at large." The Administrator should consider these same factors, as well as the information before the ICC, the inmate's record while in prison, and the factors in N.J.A.C. 10A:9-4.5(e) to make appropriate findings that are consistent with the regulations. We cannot exercise deference to the agency's decision unless we have "confidence that there has been a careful consideration of the facts in issue and appropriate findings addressing the critical issues in dispute." Bailey v. Bd. of Review, 339 N.J. Super. 29, 33 (App. Div. 2001).

In light of the factors to be considered under the regulations, we cannot discern that the Associate Administrator or the Central Office committee considered all of the information. We are constrained, therefore, to reverse and

10

remand for full consideration of the factors set forth in the DOC classification regulations and to make appropriate findings and conclusions based on those regulatory factors. See N.J.A.C. 10A:9-4.5(e)(1) to (5). As in Smith, the nature of an inmate's conviction may not permanently disqualify him from consideration of full minimum status. 346 N.J. Super. at 32.

We do not agree with Smith's argument that N.J.A.C. 10A:9-4.4(a) applies. That regulation provides that "[i]n an emergency situation, or when additional information is received which negatively affects an inmate's suitability to remain in reduced custody, the inmate's custody level may be increased by order of the Administrator, Associate Administrator, Assistant Superintendent, or Correction Major." N.J.A.C. 10A:9-4.4(a)(1). If that occurs, the custody level change, "must be reviewed and approved by the [ICC] as soon as is reasonably feasible." N.J.A.C. 10A:9-4.4(a)(2). This case did not involve an emergency nor did the Associate Administrator indicate there was additional information. His decision was based on the circumstances of the offense.

The DOC acknowledges—and we agree—that the classification review procedures utilized by the Administrator and the Central Office committee require rulemaking. See Metromedia, Inc. v. Dir., Div. of Taxation, 97 N.J. 313, 330 (1984). Our remand, therefore, includes direction to the DOC to promulgate

11

rules in the next 120 days to codify the procedures and standards used in their review of classification decisions.

Although we have reversed and remanded, our decision expressly does not change Smith's custody status from that determined by the Associate Administrator. Also, we are not issuing an advisory opinion on the scope or content of the regulations DOC will promulgate.

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4552-17T2