**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4358-18T1

EMMANUEL SANJUANELO,

    Appellant,

v.

NEW JERSEY DEPARTMENT
OF CORRECTIONS,

    Respondent.

_____

            Submitted October 5, 2020 – Decided October 28, 2020

            Before Judges Fasciale and Rothstadt.

            On appeal from the New Jersey Department of Corrections.

            Emmanuel Sanjuanelo, appellant pro se.

            Gurbir S. Grewal, Attorney General, attorney for respondent (Jane C. Schuster, Assistant Attorney General, of counsel; Christopher C. Josephson, Deputy Attorney General, on the brief).

PER CURIAM

Emmanuel Sanjuanelo, an inmate in state prison, appeals from an April 23, 2019 final agency decision by defendant, the New Jersey Department of Corrections (DOC), rejecting his challenge to the DOC's Institutional Classification Committee's (ICC) determination of his objective classification score (OCS) under N.J.A.C. 10A:9-2.6, which the DOC used to establish his custody status while incarcerated. In 2019, the ICC applied five points against Sanjuanelo based upon a 2010 *004 institutional adjudication for fighting that he argues prevented him "from being eligible for reduced custody status and/or a community release program."

According to Sanjuanelo, in 2019, the ICC misread N.J.A.C. 10A:9-2.6(b)(3) by not limiting its consideration of his institutional discipline reports of violence to the immediately preceding five years. The DOC maintains that its regulation allows it to consider institutional reports for the preceding five years of incarceration, excluding time while released. After reviewing the record before us, and mindful of the relevant standard of review, we affirm. [1]

---

[1] Sanjuanelo's appeal arises from the ICC's March 2019 initial classification of plaintiff. Both parties argued in their briefs that N.J.A.C. 10A:9-2.6 governed the plaintiff's 2019 classification. However, N.J.A.C. 10A:9-2.6 governs only reclassifications for existing inmates whose status is subject to a review for the reasons stated in N.J.A.C. 10A:9-2.3(b). Initial classifications for "newly admitted inmates," N.J.A.C. 10A:9-2.3(a)(1), are instead governed by N.J.A.C.

A-4358-18T1

The facts are undisputed. In February 2010, while incarcerated for an earlier conviction, Sanjuanelo was found guilty of fighting with a fellow inmate. At that time, when determining Sanjuanelo's OCS, the ICC assessed him five points for the fight. In 2012, he was released from prison.

In 2019, Sanjuanelo returned to prison on a new conviction. In March 2019, the ICC again assessed him five points on the OCS for the same 2010 institutional offense. Sanjuanelo submitted an internal grievance challenging the assessment, claiming that under N.J.A.C. 10A:9-2.6(b)(3), the ICC could only consider conduct occurring within the preceding five calendar years, which would exclude his 2012 offense. The ICC disagreed and explained that the five-year period referred to in the regulation meant the preceding five years of incarceration, excluding any time in which Sanjuanelo was released.

Sanjuanelo filed an administrative appeal challenging the ICC's interpretation of the regulation. On April 23, 2019, the DOC denied his appeal after concluding the ICC correctly calculated the five-year period based on time incarcerated. This appeal followed.

10A:9-2.4. Because the cited language from N.J.A.C. 10A:9-2.6(b)(3) regarding consideration of prior institutional violence for reclassification is identical to that in the corresponding regulation for initial classifications, N.J.A.C. 10A:9-2.4(c)(4), we evaluate Sanjuanelo's claims as if made with respect to the latter regulation.

Upon admission to prison, an inmate begins the initial classification process. N.J.A.C. 10A:9-2.1(b). At the end of that process, a male inmate appears before the ICC where his custody status and correctional facility assignment are decided. N.J.A.C. 10A:9-2.1(f). The DOC has six categories of custody status: close custody, maximum custody, medium custody, gang minimum custody, full minimum custody, and community custody. N.J.A.C. 10A:9-4.1(a).

The ICC utilizes an objective classification scoring instrument for male inmates, which includes assessment scales that are used to generate the inmate's classification score. N.J.A.C. 10A:9-2.4(c). The assessment scales are: severity of the offense scale, escape history scale, institutional violence scale, prior felony convictions scale, and the stability factors scale. Ibid. In reviewing those scales, the ICC must assess and assign points to certain objective criteria. Only inmates with a "score of four points or less shall indicate a recommendation for placement into minimum custody status." N.J.A.C. 10A:9-2.4(a)(3).

N.J.A.C. 10A:9-2.4 defines the "[o]bjective criteria for the Initial Instrument for Male Inmates." Among the criteria is an inmate's "[h]istory of institutional violence based on institutional disciplinary reports and/or criminal convictions for any . . . offenses during the previous five years of incarceration

from the date of review." N.J.A.C. 10A:9-2.4(c)(4) (emphasis added). N.J.A.C. 10A:9-2.6(b)(3), as discussed by the parties, uses the identical language. Institutional violence, under both, includes "*004 fighting with another person." N.J.A.C. 10A:9-2.4(c)(4)(iv).

Although an inmate has no right to reduced custody status, N.J.A.C. 10A:9-4.2, and although the ICC is not obligated to grant full minimum custody status even if an inmate qualifies, N.J.A.C. 10A:9-4.6(c), the DOC's decision to deny reduced custody status must not be arbitrary, capricious or unreasonable, or unsupported by credible evidence in the record. Henry v. Rahway State Prison, 81 N.J. 571, 579–80 (1980); White v. Fauver, 219 N.J. Super. 170, 180 (App. Div.), modified sub. nom. Jenkins v. Fauver, 108 N.J. 239 (1987).

Against this background, we consider Sanjuanelo's contention that the DOC erred when it determined its regulation requires the ICC to consider an inmate's preceding five years of incarceration when classifying the inmate's status in prison.

At the outset, we note the limited nature of our review. See In re Stallworth, 208 N.J. 182, 194 (2011). We "afford[] a 'strong presumption of reasonableness' to an administrative agency's exercise of its statutorily delegated responsibilities." Lavezzi v. State, 219 N.J. 163, 171 (2014) (quoting City of

Newark v. Nat. Res. Council, Dep't of Env't Prot., 82 N.J. 530, 539 (1980)). Thus, "[w]ithout a 'clear showing' that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record, an administrative agency's final . . . decision should be sustained, regardless of whether a reviewing court would have reached a different conclusion in the first instance." Circus Liquors, Inc. v. Governing Body of Middletown Twp., 199 N.J. 1, 9 (2009). "[W]e will uphold an agency's decision 'unless there is a clear showing that it is arbitrary, capricious, or unreasonable, or that it lacks fair support in the record.'" J.B. v. N.J. State Parole Bd., 229 N.J. 21, 43 (2017) (quoting In re Herrmann, 192 N.J. 19, 27–28 (2007)).

Our review of agency determinations "is guided by three major inquiries: (1) whether the agency's decision conforms with relevant law; (2) whether the decision is supported by substantial credible evidence in the record; and (3) whether, in applying the law to the facts, the administrative agency clearly erred in reaching its conclusion." Twp. Pharmacy v. Div. of Med. Assistance & Health Servs., 432 N.J. Super. 273, 283–84 (App. Div. 2013) (citing Stallworth, 208 N.J. at 194).

However, "we are 'in no way bound by the agency's interpretation of a statute or its determination of a strictly legal issue.'" U.S. Bank, N.A. v. Hough,

210 N.J. 187, 200 (2012) (quoting Univ. Cottage Club of Princeton N.J. Corp. v. N.J. Dep't of Env't Prot., 191 N.J. 38, 48 (2007)). We consider those issues de novo. L.A. v. Bd. of Educ. of Trenton, 221 N.J. 192, 204 (2015).

"Nonetheless," because we recognize a state agency's "experience and specialized knowledge [in] . . . administering and regulating a legislative enactment within its field of expertise," "we 'defer to an agency's interpretation of both a statute and implementing regulation, within the sphere of the agency's authority, unless the interpretation is plainly unreasonable.'" Ardan v. Bd. of Review, 231 N.J. 589, 604 (2018) (quoting In re Election Law Enf't Comm'n Advisory Op. No. 01-2008, 201 N.J. 254, 262 (2010)). "Accordingly, it is 'a rare day when an agency cannot give a plausible interpretation for one of its own regulations.'" In re Eastwick Coll. LPN-RN Bridge Program, 225 N.J. 533, 542 (2016) (quoting U.S. Bank, N.A., 210 N.J. at 203–04).

In our de novo review of an agency's interpretation of one of its regulations, "[w]e interpret a regulation in the same manner that we would interpret a statute." Ibid. (alteration in original) (quoting U.S. Bank N.A., 210 N.J. at 199).

> Every exercise of statutory interpretation is nothing more than an effort to effectuate the intent of the Legislature. . . . In determining whether [an agency's] interpretation of [a regulation] was "plainly

unreasonable," we necessarily must first turn to the words of the [regulation], "giving them their ordinary and commonsense meaning." . . . If the [regulation's] words manifest the Legislature's intent, we ordinarily look no further. . . . However, we may resort to extrinsic evidence, such as legislative history, if a plain reading of the [regulation] would lead to a result that is either absurd or at odds with the overall [regulatory] scheme.

[In re Election Law, 201 N.J. at 262–63 (citations and internal quotation marks omitted).]

Here, the disputed regulation states plainly that, among other objective criteria, the prisoner's "[h]istory of institutional violence" to be considered under the regulations is limited not to the previous five years but to "the previous five years of incarceration from the date of review." As the DOC explains, the regulation on its face permits the agency to consider the last five years of behavior while incarcerated, regardless of when the last five years occurred, in order to best predicate the risk posed by the prisoner. The history of violence while incarcerated is vital to the classification process when trying to determine the nature of the type of custody into which the prisoner can be safely placed. We find nothing unreasonable about the DOC's interpretation of the regulation's plain language or its explanation as to why the regulation applies to the most recent five years of imprisonment.

We are not persuaded otherwise by Sanjuanelo's contention that reading other portions of the regulations demonstrates the DOC's error. Specifically, he argues that the portion of the regulation that states "years from the date of review" clearly means calendar years as defined in N.J.S.A. 1:1-2 ("the word 'year' means a calendar year"), and because another portion of the regulation, N.J.A.C. 10A:9-2.6(b)(5) ("Number of disciplinary reports within the previous 18 months of incarceration prior to review, to include previous incarcerations"), states that previous incarcerations are included, the absence of "to include previous incarcerations" in (b)(3) means that a history of violence from prior incarcerations is not to be considered where the incarceration did not occur within five calendar years of the review.

Sanjuanelo's argument in this regard is premised on his failure to consider the disputed regulation's provision that defines the time period as "the <u>previous five years of incarceration</u> from the date of review" and that, to the extent the regulation imposes two different time periods for two different factors, it does so to reflect, as the DOC explains, "the heightened significance that [it] places upon an inmate's history of violence while incarcerated." There is nothing unreasonable about that explanation nor is it inconsistent with the plain language of the regulation.

Applying our deferential standard of review, we have no cause to disturb the DOC's decision as its determination conformed to the law.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION