786 A.2d 165 (2001)
346 N.J. Super. 24
Daryl SMITH, Petitioner-Appellant,
v.
NEW JERSEY DEPARTMENT OF CORRECTIONS, Respondent-Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted October 23, 2001.
Decided December 20, 2001.
*166 Daryl Smith, appellant pro se.
John J. Farmer, Jr., Attorney General, attorney for respondent (Patrick DeAlmeida, Deputy Attorney General, of counsel; Katherine M. Brooks, Deputy Attorney General, on the brief).
*167 Before Judges STERN, EICHEN and COLLESTER.
The opinion of the court was delivered by EICHEN, J.A.D.
Daryl Smith is a prisoner in the custody of the New Jersey Department of Corrections and is currently incarcerated at South Woods State Prison in the City of Bridgeton. He is serving a term of twenty-three years pursuant to convictions for aggravated manslaughter and possession and distribution of a controlled dangerous substance. On July 7, 2000, Smith was transferred from Southern State Correctional Facility to South Woods State Prison as a result of a "keep separate" order in his folder in relation to another inmate at Southern State Correctional Facility. Prior to his transfer, he qualified for and received "full minimum custody status." See N.J.A.C. 10A:9-4.3(e).[1] After his transfer to South Woods State Prison, the prison's Institutional Classification Committee reviewed Smith's status, and as a result, he was "reverted" to "gang minimum custody status."[2]N.J.A.C. 10A:9-4.3(d). Stanley Nunn, the administrator of the facility, reviewed the determination, concluding that Smith was not eligible for "full minimum custody status" at South Woods State Prison because his conviction was for aggravated manslaughter.
After this appeal was filed, James Finger, Assistant Superintendent assigned to Facility 2 of South Woods State Prison, submitted an affidavit in which he amplifies the reasons for increasing Smith's custody status. There, Finger states that Smith "was reviewed by the Facility 2 Classification Committee and reverted to Gang Minimum Custody from Full Minimum Custody in accordance with established guidelines, due to the nature of his present offense." Finger explains that because the prison is within a residential area of the City of Bridgeport, "it would be a threat to the safety and security of the community to have inmates convicted of Aggravated Manslaughter residing outside the secure perimeter of the institution." In contrast, Southern State Correctional Facility is in a rural area.
On appeal, Smith makes the following arguments:
POINT I
THE INCREASE IN APPELLANT'S CUSTODY LEVEL IS CONTRARY TO N.J.A.C. 10A:9-4.5(e), 10A:4-3.1(a), AS WELL AS THIS STATE'S FAIRNESS & RIGHTNESS DOCTRINE, THE ADMINISTRATIVE PROCEDURE ACT, AND RESULTS IN VIOLATIONS OF APPELLANT'S SUBSTANTIVE & PROCEDURAL DUE PROCESS RIGHTS UNDER THE U.S. CONST. AMEND. XIV, N.J. CONST. ART. I, ¶ 1. (Partially raised below)
POINT II
THE APPELLANT HAS A LIBERTY INTEREST IN MAINTAINING FULL MINIMUM STATUS AND THE ACTIONS OF THE RESPONDENTS VIOLATED APPELLANTS'S DUE PROCESS RIGHTS UNDER THE U.S. CONST. AMEND. XIV, N.J. CONST. ART. I, ¶ 1, AND N.J. FAIRNESS *168 & RIGHTNESS DOCTRINE. (Raised below)
We affirm.
It is well-settled that the Due Process Clause of the United States Constitution does not give prisoners a liberty interest in remaining free from transfers to more restrictive facilities. See, e.g., Jenkins v. Fauver, 108 N.J. 239, 249, 528 A.2d 563 (1987) (citing Meachum v. Fano, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976) and Montanye v. Haymes, 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976)). Applying this principle to Smith's transfer, we are satisfied that Smith had no liberty interest in remaining at Southern State Correctional Facility. Likewise, Smith had no liberty interest in retaining "full minimum custody status." Nonetheless, Smith contends that the transfer was fundamentally unfair because, although he is permitted to work outside the prison facility, the increase in custody status requires him to reside within its perimeters. He admits, however, that he has not lost any work credit as a result of the increased custody status.
In Sandin v. Conner, 515 U.S. 472, 115 S.Ct. 2293, 132 L.Ed.2d 418 (1995), the United States Supreme Court held that a change in a prisoner's conditions of confinement does not trigger the need for due process safeguards unless the change imposes "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." 515 U.S. at 484, 115 S.Ct. at 2300, 132 L.Ed.2d at 430. "New Jersey follows the Sandin test in circumstances involving a change in custody status." Muhammad v. Balicki, 327 N.J.Super. 369, 372, 743 A.2d 376 (App.Div.2000). We agree with the Department of Corrections that the residential restriction does not constitute "a significant hardship," triggering safeguards under the Due Process Clause. Ibid.
In addition, under State law, the Commissioner of the Department of Corrections has complete discretion in determining an inmate's place of confinement, N.J.S.A. 30:4-91.2. See Hluchan v. Fauver, 480 F.Supp. 103, 108 (D.N.J.1979) (observing that inmates have no liberty right to be assigned to any particular custody level); see also N.J.S.A. 2C:43-10a (sentences of one year or longer are "to the custody of the Commissioner of the Department of Corrections"). Indeed, under New Jersey law, a reduction in custody status is a matter of privilege, not of right. N.J.A.C. 10A:9-4.2. Classification of prisoners and the decision as to what privileges they will receive rests solely within the discretion of the Commissioner of the Department of Corrections. N.J.S.A. 30:1B-6; N.J.S.A. 30:4-91.1.
In its brief, the Department of Corrections relies on N.J.A.C. 10A:9-4.5(e)(5) to support its decision to "revert" Smith to "gang minimum custody status" from "full minimum custody status." That regulation provides that
[a]n inmate who has been granted reduced custody status may have his or her custody status increased for ... [a]ny reason which, in the opinion of the Superintendent and Institutional Classification Committee, relates to the best interests of the inmate or the safe, orderly operation of the correctional facility or the safety of the community or public at large.
As previously noted, upon his transfer to South Woods State Prison, according to Assistant Superintendent Finger, Smith was denied reduced status because of public safety concerns arising out of the nature of his aggravated manslaughter conviction and the location of the prison within a residential community. In contrast, *169 Administrator Nunn attributed the denial solely to his homicide[3] conviction.
The Department's regulation establishing categories of inmates excluded from eligibility for reduced custodial status does not include inmates serving sentences for "homicide," see N.J.A.C. 10A:9-4.8; see also Jenkins, supra, 108 N.J. at 254-55, 528 A.2d 563 (observing that only sex offenders, arsonists, and escapees are excluded from consideration for reduced custody status and recognizing that the regulations do not disqualify an inmate convicted of homicide from such consideration). Hence, Smith could not be disqualified under the regulations for consideration for "full minimum custody status" solely because of his conviction for aggravated manslaughter. Indeed, in rejecting Smith's appeal from the Institutional Classification Committee's decision denying him "full minimum custody status," the administrator indicated that Smith might achieve such status through participation in a program referred to as NuWay, and that he had referred Smith's name "to Social Services to conduct an ASI scoring on [him] to determine [his] eligibility for that program."[4] In addition, Nunn commended Smith for his past "positive institutional adjustment" and encouraged him to continue to "make progress that can be considered at your next classification review."
From these remarks, we understand that the Institutional Classification Committee does not view Smith as permanently disqualified from consideration for reduced custody status by virtue of his homicide conviction which apparently triggered its public safety concerns as set forth in N.J.A.C. 10A:9-4.5(e)(5). Indeed, the Department of Corrections's brief on appeal indicates as much. It explains that "custody status" decisions are made by the Institutional Classification Committee "pursuant to its consideration of a list of 21 factors including correctional facility adjustment, drug dependency and/or involvement, or any other factor pertinent to the inmate's case [citing N.J.A.C. 10A:9-3.3(a) which lists twenty-one factors with respect to assignments pertaining to custody status, among other assignments]." We also note that the regulations mandate review dates "no more than 12 months from the date of initial classification," N.J.A.C. 10A:9-3.5(a), and that an inmate may submit a request for reassignment in the area of custody status at that time, N.J.A.C. 10A:9-3.5(e).
We make these observations to clarify the basis for our affirmance. First, we do not view the Assistant Superintendent's decision as denying Smith's application for "full minimum custody status" as a final, immutable determination due to his aggravated manslaughter conviction and/or the location of the prison with a residential area. Indeed, we read the record and the regulations as envisioning continuous review of an inmate's custody status except in those limited circumstances we previously noted. See N.J.A.C. 10A:9-4.8. Second, we are convinced that the Institutional Classification Committee did not abuse its discretion in initially withholding "full minimum custody status" from Smith upon his transfer to South Woods State Prison based on the nature of his conviction and the safety concerns that his conviction initially generated, pending assessment of his *170 adjustment and other factors pertinent to incarceration at South Woods State Prison. See N.J.A.C. 10A:9-3.3(a)(6) (in making determinations on transfers or assignments to custody status, the Institutional Classification Committee shall consider "[c]orrectional facility adjustment"). Nor, as we previously observed, did the decision to increase his custody status violate due process of law or offend notions of administrative fairness.
However, in future reviews of Smith's custody status, the Superintendent and the Institutional Classification Committee must consider all of the factors pertinent to Smith's status in making its decision to maintain him at a reduced custody status. Although the Attorney General's brief claims that was done, the Administrator's decision and the affidavit of the Assistant Superintendent suggest otherwise. Neither the nature of an inmate's conviction, except for those offenses specifically excluded for eligibility in N.J.A.C. 10A:9-4.8, nor the location of a correctional facility within a residential area alone, may permanently disqualify an inmate from consideration for "full minimum custody status." We believe that by adopting N.J.A.C. 10A:9-4.5(e)(5), which allows the Superintendent and the Institutional Classification Committee to increase the custody of an inmate who has been granted reduced custody status, "for any reason which, in the opinion of the Superintendent and Institutional Classification Committee relates to ... the safety of the community or public at large," the Department of Corrections did not intend to give the Superintendent and Institutional Classification Committee unbridled discretion to make that determination. That discretion must be circumscribed by the twenty-one factors found in N.J.A.C. 10A:9-3.3(a).
Accordingly, we affirm the initial decision to increase Smith's custody status to "gang minimum" following his transfer from Southern State Correctional Facility to South Woods State Prison. We offer no view concerning Smith's qualification for reduced custody status resulting from any future reviews.
Affirmed.
NOTES
[1] Inmates classified as "full minimum custody status" are those assigned to work details, jobs or programs outside the main correctional facility with minimal supervision, and/or a satellite unit or minimum security trailer unit. N.J.A.C. 10A:9-4.3(e).
[2] Inmates classified as "gang minimum custody status" may be assigned to activities or jobs that require them to move outside the security of the correctional facility but are under continuous supervision of a correction officer. N.J.A.C. 10A:9-4.3(d).
[3] Aggravated manslaughter is a criminal homicide. N.J.S.A. 2C:11-4.
[4] The record does not contain any reliable information with respect to this program. Smith contends he is not eligible for the Nu-Way program. We do not consider the claim as it has not been fully developed in this appeal.