**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5620-17T1

CARL NORMAN,

    Appellant,

v.

NEW JERSEY DEPARTMENT
OF CORRECTIONS,

    Respondent.

_____

Submitted October 31, 2019 – Decided November 21, 2019

Before Judges Alvarez and DeAlmeida.

On appeal from the New Jersey Department of Corrections.

Carl Norman, appellant pro se.

Gurbir S. Grewal, Attorney General, attorney for respondent (Jane C. Schuster, Assistant Attorney General, of counsel; Rachel Simone Frey, Deputy Attorney General, on the brief).

PER CURIAM

Plaintiff Carl Norman appeals from the July 11, 2018 decision of the Department of Corrections (DOC) denying his request for a reduction in custody status from gang minimum to full minimum. We reverse and remand for reconsideration of Norman's administrative appeal.

I.

Norman is incarcerated at South Woods State Prison (SWSP) serving a thirty-one-year sentence with a thirty-year period of parole ineligibility for a 1990 murder. The victim died of a brain injury and asphyxiation after being struck on the head with a wooden statue and strangled with an extension cord.

In June 2018, the SWSP Institutional Classification Committee (ICC)[1] denied Norman's request to reduce his custody classification from gang minimum custody status to full minimum custody status.[2] Although DOC's

---

[1] The ICC is authorized to "[r]eview . . . inmate applications for change in custody status . . . ." N.J.A.C. 10A:9-3.1(a)(3). It is comprised of the administrator, associate administrator, or assistant superintendent; director of education; social work supervisor; correction major; supervising classification officer; or the designees of those officials. N.J.A.C. 10A:9-3.2(a)(1) to (5).

[2] An inmate assigned to gang minimum custody "may be assigned to activities or jobs which routinely require them to move outside the security perimeter of the correctional facility, but on the grounds of the facility and under continuous supervision of a custody staff member, civilian instructor or other employee authorized to supervise inmates." N.J.A.C. 10A:9-4.3(d). An inmate assigned to full minimum custody status can be assigned to "[w]ork details, jobs or
(continued)

A-5620-17T1

reclassification tool, <u>see</u> N.J.A.C. 10A:9-2.2(a), indicated Norman was suitable for either gang or full minimum custody status, the ICC denied his request for full minimum custody status based on the field account of Norman's crime, which the ICC determined involved an "extreme level of violence . . . ."

Norman appealed the ICC decision to the Administrator of SWSP. He argued the ICC's written decision relied on an improper factor and contradicted what he was told when he appeared before the committee. According to Norman, an ICC member told him his request was denied solely because he had been convicted of murder.

An SWSP official, whose title is not readily apparent from the record, responded to Norman's appeal with a written description of what the ICC considered when it made its decision. The response did not address the substance of Norman's appeal. The following day, Norman submitted a second appeal, arguing the response he received did not address his substantive claims.

On July 11, 2018, the Administrator of SWSP issued the following response to Norman's second appeal:

> Per your Progress Notes you were denied due to Field
> Account of your present offense/extreme violence in

programs outside the main correctional facility, (on or off the grounds of the facility) with minimal supervision; and/or . . . [a] satellite unit or minimum security unit." N.J.A.C. 10A:9-4.3(e).

commission of this offense.  Please note that I []as the Administrator have no authority to override a denial by the ICC.  As such you[r] appeal is denied.  Please consider this your final appeal at this level.

This appeal followed.  Norman makes the following arguments for our consideration:

THE DOC DECISION TO DENY APPELLANT FULL MINIMUM CUSTODY STATUS WAS ARBITRARY, CAPRICIOUS AND UNREASONABLE, UNSUPPORTED BY CREDIBLE EVIDENCE IN THE RECORD, AND NOT FAIRLY RENDERED.

A.   THE DOC DECISION MISREPRESENTS THE FACTS SPECIFIC TO NORMAN.

B.  THE DOC FAILED TO PROVIDE REASONING FOR THE DENIAL.

C.   THE DOC FAILED TO CONSIDER ALL FACTORS.

In his reply brief, Norman argues:

THE RESPONSE JUSTIFICATION FOR DENYING NORMAN FULL MINIMUM CUSTODY DOES NOT COMPORT WITH STATE LAW AND SHOULD THEREFORE BE VACATED.[3]

---

[3]  While this appeal was pending, the ICC undertook what it described as a "routine yearly review" of Norman's custody status.  The ICC denied Norman's request for full minimum custody status.  According to Norman, an ICC member told him regardless of any of the regulatory factors or favorable results of the reclassification tool, the ICC considers Norman ineligible for full minimum custody because he was convicted of murder.  The June 28, 2019 decision of the

(continued)

Review of an administrative agency's final decision is limited. Kadonsky v. Lee, 452 N.J. Super. 198, 201-02 (App. Div. 2017) (citing In re Stallworth, 208 N.J. 182, 194 (2011)). "We will not reverse an agency's judgment unless we find the decision to be 'arbitrary, capricious, or unreasonable, or [] not supported by substantial credible evidence in the record as a whole.'" Id. at 202 (quoting Stallworth, 208 N.J. at 194). We "defer to the specialized or technical expertise of the agency charged with administration of a regulatory system." K.K. v. Div. of Med. Assistance & Health Servs., 453 N.J. Super. 157, 160 (App. Div. 2018) (quoting In re Virtua-West Jersey Hosp., 194 N.J. 413, 422 (2008)). The Legislature has provided for the broad exercise of DOC's discretion in all matters regarding the administration of a prison facility. Russo v. N.J. Dep't of Corr., 324 N.J. Super. 576, 583 (App. Div. 1999).

The "[c]lassification of prisoners and the decision as to what privileges they will receive rests solely within the discretion of the Commissioner of the [DOC]." Smith v. N.J. Dep't of Corr., 346 N.J. Super. 24, 30 (App. Div. 2001). An inmate has no liberty interest in a particular custody level. See Hluchen v.

---

ICC states full minimum custody was denied based on the field account of Norman's crime. We granted Norman's motion to supplement the record with the June 28, 2019 ICC decision and his account of what transpired at the ICC.

Fauver, 480 F. Supp. 103, 108 (D.N.J. 1979).  However, DOC's decision to deny reduced custody status must not be arbitrary, capricious, unreasonable, or unsupported by credible evidence in the record.  Henry v. Rahway State Prison, 81 N.J. 571, 579-80 (1980).

Under DOC regulations, "[c]hanges in inmate custody status within a particular correctional facility shall be made by the [ICC]."  N.J.A.C. 10A:9-4.4(a).  The ICC applies criteria set forth in the regulations and the "objective classification instrument score . . . to determine whether an inmate is eligible for reduced custody consideration."  N.J.A.C. 10A:9-4.1(b).

In considering whether to reduce an inmate's custody status, the ICC "shall take into consideration all relevant factors."  N.J.A.C. 10A:9-4.5(a).  Those factors are: (1) "[f]ield account of the present offense;" (2) "[p]rior criminal record;" (3) "[p]revious incarcerations;" (4) "[c]orrectional facility adjustment;" (5) "[r]esidential community program adjustment;" (6) "[t]he objective classification score;" (7) "[r]eports from professional custody staff;" (8) "[a] conviction for a present or prior offense that resulted in a life sentence;" and (9) "[a]ny reason which, in the opinion of the Administrator and the ICC, relates to the best interests of the inmate or the safe, orderly operation of the correctional facility or the safety of the community or public at large."  N.J.A.C. 10A:9-

4.5(a)(1) to (9). Absent an express regulation to the contrary, the nature of an inmate's conviction, standing alone, may not permanently disqualify the inmate from consideration for full minimum custody status. Smith, 346 N.J. Super. at 32.

DOC regulations do not address whether a decision by the ICC denying a reduction in custody status may be appealed to the Administrator of the correctional facility. As noted above, the SWSP Administrator informed Norman he lacked authority to reverse a decision by the ICC to deny full minimum custody status. However, DOC recently informed this court the Administrator of SWSP "has the authority to review and approve/disapprove any custody status recommended by the [ICC]." Smith v. N.J. Dep't of Corr., No. A-4552-17 (App. Div. Nov. 4, 2019) (slip op. at 4).

In addition, in February 2019, DOC "implement[ed] a rule exemption procedure to make clear that the Administrator or designee has the authority to review and approve/disapprove the ICC recommendations as to custody status, and that any denials of [f]ull [m]inimum are reviewed and approved/disapproved by Central Office [committee]."[4] Id. at 5. DOC also informed the court it

_____

[4] It appears it has been DOC's practice in some instances to permit an inmate to appeal from an Administrator's review of an ICC custody status determination
(continued)

intended to commence rulemaking to codify internal appeal procedures. Id. at 6. We held "DOC acknowledges – and we agree – that the classification review procedures utilized by the Administrator and the [COC] require rulemaking." Id. at 11. We directed DOC to codify within 120 days the procedures and standards used in their review of classification decisions. Id. at 11-12.

The Administrator's rejection of Norman's appeal contradicts DOC's interpretation of his authority to review the ICC's decision. In addition, the absence of regulations establishing the procedures, standards, and authority of COC to review custody decisions did not put Norman on notice of what appears to be a further available avenue of administrative review, should he be unsuccessful before the Administrator. For those reasons, we reverse the July 11, 2018 decision of the Administrator and remand for the Administrator to reconsider Norman's appeal of the ICC's decision. On reconsideration, the Administrator shall consider all factors set forth in N.J.A.C. 10A:9-4.5(a)(1) to (9) and other applicable regulations. In addition, DOC shall notify Norman of any available review by COC and the procedures for appealing to COC. Norman

---

to the Central Office Committee (COC). The Department's regulations do not define the COC or its authority. We offer no opinion with respect to whether an exhaustion of administrative remedies requires an appeal of a custody status decision to COC.

shall remain at his current custody status while proceedings on remand are pending, unless reduced by the agency.

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION