**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4221-17T3

GREGORY RAVENELL,

     Appellant,

v.

NEW JERSEY DEPARTMENT
OF CORRECTIONS,

     Respondent.

_____

Submitted October 29, 2019 – Decided December 3, 2019

Before Judges Ostrer and Susswein.

On appeal from the New Jersey Department of Corrections.

Gregory Ravenell, appellant pro se.

Gurbir S. Grewal, Attorney General, attorney for respondent (Jane C. Schuster, Assistant Attorney General, of counsel; Nicholas A. Sullivan, Deputy Attorney General, on the brief).

PER CURIAM

Almost twenty-eight years ago, Gregory Ravenell shot and killed a delivery truck driver after robbing him. Ravenell was twenty-years old. He pleaded guilty to felony murder, N.J.S.A. 2C:11-3(a)(3); the State dismissed charges of purposeful murder, N.J.S.A. 2C:11-3(a)(1), 3(a)(2), and related offenses; and Ravenell received a thirty-year prison term, with no possibility of parole. After serving virtually all his adult life in prison, Ravenell will soon rejoin the community. His "max-out" date is January 7, 2022. To ease his reentry, Ravenell sought a reduction in his custody status to "full minimum." With that status, he could work outside the main prison with minimal supervision. N.J.A.C. 10A:9-4.3(e). He could also apply for transfer to the Residential Community Release Program (RCRP), colloquially known as a halfway house, but acceptance would depend on satisfying additional requirements. See N.J.A.C. 10A:9-4.3(f); N.J.A.C. 10A:20; Shabazz v. N.J. Dep't. of Corr., 385 N.J. Super. 117, 124-25 (App. Div. 2006).

The Institutional Classification Committee (ICC) of South Woods State Prison (SWSP) approved Ravenell for full minimum status, but the prison's associate administrator reversed the decision. He stated that the "circumstances" of Ravenell's 1991 crime "indicate[] a blatant disregard for human life as well as an extreme level of violence." Ravenell appealed. In March 2019, we granted

the Department's motion for a temporary remand, "to review, clarify and further explain" the decision. The following month, the ICC of Northern State Prison (NSP), to which Ravenell had been transferred, rejected full minimum status. The NSP Administrator then approved that decision, which the Department's Central Office affirmed.

The two administrators thereafter issued a written decision explaining their opposition to full minimum status. They reaffirmed the SWSP Associate Administrator's original reasoning. They referred to Ravenell's pre-sentence investigation report, which they said indicated that Ravenell mercilessly killed his victim. They stated that Ravenell reached into the truck, put the victim in a headlock, and fatally shot him, although "[t]here was no reported evidence of a struggle and/or resistance by the victim" and "[t]here was no indication that the victim was armed with a weapon or was resisting the robbery."

The case returns to us for decision.

In his appeal, Ravenell challenges the SWSP Associate Administrator's authority to override the ICC's decision. He also contends the decision denying him full minimum status is arbitrary, capricious or unreasonable. We are unpersuaded by the first point, but remand as to the second, because the two administrators relied on contested facts about Ravenell's crime, and there is

3

insufficient evidence that they considered other relevant factors as Departmental regulations mandate.

We first address Ravenell's challenge to an administrator's authority to override an ICC. N.J.A.C. 10A:9-4.4(a) states that "[c]hanges in inmate custody status within a particular correctional facility shall be made by the Institutional Classification Committee." See also N.J.A.C. 10A:9-3.1 (stating that "[e]ach correctional facility shall establish an I.C.C., which shall be responsible for . . . [r]eview of inmate applications for change in custody status"). In considering a custody status change, the ICC must consider "all relevant factors," which "may include, but are not limited to" the following:

> 1. Field account of the present offense;
> 2. Prior criminal record;
> 3. Previous incarcerations;
> 4. Correctional facility adjustment;
> 5. Residential community program adjustment;
> 6. The objective classification score;
> 7. Reports from professional and custody staff;
> 8. A conviction for a present or prior offense that resulted in a life sentence; and
> 9. Any reason which, in the opinion of the Administrator and the I.C.C., relates to the best interests of the inmate or the safe, orderly operation of the correctional facility or the safety of the community or public at large.
>
> [N.J.A.C. 10A:9-4.5(a).]

Under a separate provision, decisions on an inmate's "custody status . . . and residential community programs shall be made after consideration of" twenty-one factors. N.J.A.C. 10A:9-3.3(a). We presume these apply to initial decisions regarding such matters, as well as regular reviews, required by N.J.A.C. 10A:9-3.5. The twenty-one factors are:

> 1. The objective classification scoring results (excluding inmates committed to A.D.T.C.);
> 2. Needs and interests expressed by inmate;
> 3. Age;
> 4. Family status;
> 5. Social contacts with family and friends;
> 6. Correctional facility adjustment;
> 7. Residential community program adjustment;
> 8. Educational history and needs;
> 9. Vocational history and needs;
> 10. Military history;
> 11. Nature and circumstance of present offense;
> 12. Prior offense record;
> 13. Records from previous confinement;
> 14. Detainers on file or pending;
> 15. Substance dependency and/or involvement;
> 16. Sexual adjustment;
> 17. History of escape, attempted escape or propensity for escape;
> 18. Current psychological and/or psychiatric reports;
> 19. Medical history and recommendations;
> 20. Arson history;
> 21. A conviction for any offense that resulted in a life sentence when one or more of the following aggravating circumstances are in the inmate's present or prior offense history (see N.J.S.A. 2C:44-1a.). . . .
>
> [N.J.A.C. 10A:9-3.3(a).]

As the Acting Commissioner recently recognized, the regulations say nothing about an administrator's power to override an ICC. Indeed, a prior Departmental standard vested in the ICC's "sole authority to reduce or increase an inmate's custody status." Jenkins v. Fauver, 108 N.J. 239, 245 (1987) (citing Standard 853); see also Shabazz, 385 N.J. Super. at 122 n.1 (noting that "[d]ecisions as to custody status . . . are made by the Institutional Classification Committee"); Smith v. N.J. Dep't of Corr., 346 N.J. Super. 24, 31 (App. Div. 2001) (noting that a Department brief "explain[ed] that 'custody status' decisions are made by the Institutional Classification Committee").

Nonetheless, "the Commissioner possesses the residual authority to supersede the custodial classification standards." Jenkins, 108 N.J. at 255. Using his authority under N.J.A.C. 10A:1-2.4, the Acting Commissioner issued a rule exemption on February 2, 2019, clarifying that an administrator could overrule ICC decisions to grant full minimum status.[1] The Acting Commissioner also authorized the Central Office to review any administrator's decision. The Acting Commissioner expressed the intention to incorporate these

---

[1] The rule exemption has not been published in the New Jersey Register, nor, as best we can tell, has it been posted on the Department's website. Therefore, we attach it, including the Department's redactions, as an exhibit to the court's opinion.

A-4221-17T3

clarifications in a formal rulemaking. See Jenkins, 108 N.J. at 255 (highlighting the need to adopt formal regulations).

We discern no legal impediment to the Acting Commissioner's temporary clarification. An agency may expressly reserve unto itself the power to waive a regulation. In re CAFRA Permit No. 87-0959-5, 152 N.J. 287, 308 (1997). Here, the Department authorized the Commissioner to "exempt rules and regulations for the administration of correctional facilities," and to "relax certain requirements of a rule for good cause." N.J.A.C. 10A:1-2.4(a), (c). Recently, our court ordered the Department to adopt formal regulations within 120 days "to codify the procedures and standards used in their review of classification decisions". Smith v. Dept. of Corr., No. A-4552-17 (App. Div. Nov. 4, 2019) (slip op. at 11-12).[2]

Ravenell contends that applying the Commissioner's clarification to his case violates the prohibition of ex post facto laws. We disagree. We have noted that, in practice, an ICC decision has been subject to an administrator's review. See Smith, 346 N.J. Super. at 27-28. Even assuming the Acting Commissioner has retroactively relaxed or changed the law, as opposed to clarifying pre-

---

[2]    We cite this opinion, although not approved for publication, for its preclusionary effect on the issue of promulgating a formal regulation. See R. 1:36-3.

existing policy, authorizing administrators to override ICCs does not "impose[] additional punishment to an already completed crime." See Riley v. N.J. State Parole Bd., 219 N.J. 270, 285 (2014) (addressing prohibition of ex post facto laws). A change in custody status generally does not implicate a liberty interest protected by the Due Process Clause, unless it involves an "atypical, significant deprivation." Sandin v. Conner, 515 U.S. 472, 486 (1995); see also Shabazz, 385 N.J. Super. at 123. Absent punitive intent, "the Ex Post Facto Clause does not bar a prison from changing the regulations governing their internal classification of prisoners." Dyke v. Meachum, 785 F.2d 267, 268 (10th Cir. 1986).

Ravenell's challenge to the custody status decision itself rests on firmer ground. Although the Commissioner has "complete discretion" to determine an inmate's placement and custody status, the Commissioner has circumscribed that discretion as delegated to the ICC and prison administrators. Smith, 346 N.J. Super. at 29, 33. We may disturb a final agency action if it is arbitrary, capricious or unreasonable, or it clearly violates its statute or State policy. Williams v. N.J. Dep't of Corr., 423 N.J. Super. 176, 182 (App. Div. 2011). Also, "an administrative agency ordinarily must enforce and adhere to, and may not disregard, the regulations it has promulgated." Cnty. of Hudson v. N.J. Dep't

of Corr., 152 N.J. 60, 70 (1997) (citations omitted).  The Commissioner has not exempted ICCs or administrators from applying the factors set forth in N.J.A.C. 10A:9-3.3 and N.J.A.C. 10A:9-4.5.  The two administrators stated in their joint written decision in this case that an administrator's review of an ICC decision "must be based on criteria articulated in the regulations."[3]

As we held in Smith, regarding future reviews of an inmate's custody status, the decision-maker "must consider all of the factors pertinent to [the inmate's] status in making its decision . . . ."  346 N.J. Super. at 32.  There is insufficient evidence in the two administrators' written decision that they considered any of the nine factors other than the "[f]ield account of the present offense," N.J.A.C. 10A:9-4.5(a)(1).[4]  "Field account" is not defined, but in connection with that factor, the administrators focused on the circumstances

---

[3] They also said that the decision must be based on "internal management procedures as well as any potential safety and security risks."  We question whether reliance on non-promulgated internal procedures would run afoul of the recent order in Smith, slip op. at 11-12, as well as Jenkins, 108 N.J. at 255, and Metromedia, Inc. v. Dir., Div. of Taxation, 97 N.J. 313, 330 (1984).  We note that safety and security considerations are already addressed in the existing regulation governing the ICC.  N.J.A.C. 10A:9-4.5(a)(9).

[4] The administrators also noted that they considered one of the twenty-one factors, the "nature and circumstance of present offense."  N.J.A.C. 10A:9-3.3(a)(11).

surrounding Ravenell's offense.[5]  Nonetheless, the administrators did not address other factors that are plainly relevant, including Ravenell's positive adjustment to prison life in recent years, see N.J.A.C. 10A:9-4.5(a)(4); his favorable objective classification score of zero, see N.J.A.C. 10A:9-4.5(a)(6); and the views – pro or con – of professional and custody staff, see N.J.A.C. 10A:9-4.5(7).  Additional factors may have militated for or against reducing his custody status.

Our requirement that the administrators and the ICC clearly state which factors they considered, and which factor(s) helped tip the scale in either direction, is not rooted solely in formalism.  Rather, it is premised on the well-settled principle that an agency decision must clearly state its reasoning and conclusion. Put another way, an agency must "show its work," so that a reviewing court can understand how it came to its conclusion.  See Balagun v. N.J. Dep't of Corr., 361 N.J. Super. 199, 202-203 (App. Div. 2003) ("We cannot accept without question an agency's conclusory statements, even when they

---

[5] Except for offenses specifically excluded, and Ravenell's offense is not one of them, see N.J.A.C. 10A:9-4.8, the administrator may not rely on the inmate's crime to permanently disqualify him or her from full minimum status. Smith, 346 N.J. Super. at 32.  In particular, a 2006 Department memorandum advised administrators that a murder conviction may not be used "as the sole reason for denial of full minimum."

represent an exercise in agency expertise. The agency is obliged . . . to tell us why") (internal quotation marks and citations omitted). By stating only that "circumstances . . . indicate[] a blatant disregard for human life as well as an extreme level of violence," a reviewing court has no way to know whether the ICC and administrator considered any of the other relevant factors in N.J.A.C. 10A:9-4.5(a), and what weight they attributed to them.[6]

Furthermore, the administrators accepted a disputed version of the offense, purportedly set forth in the PSI report.[7] They concluded that Ravenell mercilessly and wantonly killed his robbery victim, who did not struggle or resist. In effect, the administrators assumed that Ravenell committed purposeful murder, a charge that the State ultimately dismissed. However, according to the PSI report, Ravenell "claim[ed] that he shot the victim because he was reaching for what the defendant believed to be a weapon. The defendant claim[ed] he fired his weapon in self-defense."

---

[6] We note that the Department used a form entitled "Final Approval for Reduced Custody FM Reason for 'No' Vote" that encourages an ICC member or administrator to identify a single reason for denial, rather than address all "relevant factors" as N.J.A.C. 10A:9-4.5(a) requires.

[7] The copy of the PSI that the Department has included in the record before us does not include the details that the administrators attribute to it. We surmised that an attachment, incorporating the "offense circumstances" section, was inadvertently omitted; however, we have been assured nothing is missing.

A court may not rely on disputed material in a presentence report. State v. Hupka, 203 N.J. 222, 241 (2010); see also In re Kollman, 210 N.J. 557, 576 (2012). If a defendant who pleads guilty denies factual allegations in a PSI report that fall outside his allocution, then the disputed facts must be omitted, or resolved based on cognizable evidence after a hearing. Hupka, 203 N.J. at 241; see also Kollman, 210 N.J. at 476-77. As the Chief Justice explained, "To the extent there is a material dispute [regarding details of offense to which defendant pled guilty], the judge should conduct an appropriate review of the facts . . . and make relevant findings after a hearing." Hupka, 203 N.J. at 250 (Rabner, C.J., dissenting).

We discern no reason that an administrative agency, utilizing a presentence report, should be subject to a different standard. Ravenell pleaded guilty to felony murder, not purposeful murder. He disputed that his offense was as egregious as purportedly alleged in his PSI report. The administrators were not free to rely on that unfavorable version of the crime.[8]

In sum, we remand for reconsideration by the ICC of the correctional institution where Ravenell is now assigned. It shall consider all pertinent factors

_____

[8]  Furthermore, Ravenell's allocution is not part of the record and there is no evidence that the administrators relied upon it in characterizing the nature of Ravenell's crime.

set forth in the regulations, present its reasoning, and may not rely on disputed material in Ravenell's PSI report absent a fact-finding hearing.

Remanded. The ICC shall issue a new decision within 30 days. Any subsequent review by the appropriate administrator and Central Office shall be completed within an additional 30 days thereafter. We retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

# EXHIBIT



## State of New Jersey
### DEPARTMENT OF CORRECTIONS

FORM 911
Revised 10/5/2016
NJAC 10A:1-2

Page 1 of 2

REQUEST FOR RULE EXEMPTION

Date of Request: _____ Dec 14, 2018 _____ Correctional Facility/Unit: _____ COHQ _____

Citation of N.J.A.C. 10A Rule affected: _____ N.J.A.C. 10A:9-3 _____

Name & Title/Rank of initiator _____ White, SSA _____

Name of Inmate: (if applicable) _____ NA _____ Inmate SBI #: _____ NA _____

Describe in detail how the practice deviates from the rule:

10A is silent in regards to operational practice ▮▮▮▮▮▮▮▮ whereas the Administrator has the authority to overrule the decision of the Institutional Classification Committee (ICC) to grant Full Minimum Custody status , and that Central Office staff, of Director level or above, has the authority to review and approve, or deny, any Full Minimum recommendation.

Explain instances when strict compliance with the affected Rule would result in undue hardship, an inability to meet a therapeutic, rehabilitative or medical need and/or a security risk:

Failure to codify the current practice ▮▮▮▮▮▮▮▮▮▮ could result in more appeals and Appellate Court decisions which could overturn the current custody status and housing requirements of these inmates. The added levels of review provide inmates with an automatic secondary review and at the same time provide added or secondary risk assessment.

Source of Funds: (if required) _____ NA _____

| Director: | ☐ Recommended | ☐ Not Recommended | |
|---|---|---|---|
| N/A | | | |
| Printed Name | Signature | | Date |

| Assistant Commissioner: | ☐ Recommended | ☐ Not Recommended | |
|---|---|---|---|
| N/A | | | |
| Printed Name | Signature | | Date |

| Deputy Commissioner: | ☑ Recommended | ☐ Not Recommended | |
|---|---|---|---|
| Norris, Deputy Commr. | Darrin | | 1/24/2019 |
| Printed Name | Signature | | Date |

| Director, Office of Legal Affairs | ☐ Recommended | ☐ Not Recommended | |
|---|---|---|---|
| Hulse | | | 1/24/19 |
| Printed Name | Signature | | Date |

| Commissioner: | ☑ Approved | ☐ Disapproved | |
|---|---|---|---|
| Marcus Hicks | | | 2/2/19 |
| Printed Name | Signature | | Date |

Cra000013

A-4221-17T3

FORM 911
Revised 11/2016
NJAC 10A:1-2

Page 2 of 2

## REQUEST FOR RULE EXEMPTION  (Con't)

Signatures of Approving Officers on this page apply to information
on all pages of this form.    DO NOT SEPARATE PAGES.

Date of Request:          Dec 14, 2018          Correctional Facility/Unit:                    COHQ

Citation of N.J.A.C. 10A Rule affected:          N.J.A.C. 10A:9-3

Name & Title/Rank of initiator          White, SSA

|          Print Form          |          Save As...          |          Reset Form          |

Cra000014

16

A-4221-17T3