**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4963-17T3

OMAR AIKENS,

      Appellant,

v.

NEW JERSEY DEPARTMENT
OF CORRECTIONS,

      Respondent.

_____

Submitted December 2, 2019 – Decided February 19, 2020

Before Judges Ostrer and Susswein.

On appeal from the New Jersey Department of Corrections.

Omar Aikens, appellant pro se.

Gurbir S. Grewal, Attorney General, attorney for respondent (Jane C. Schuster, Assistant Attorney General, of counsel; Rachel Simone Frey, Deputy Attorney General, on the brief).

PER CURIAM

Appellant, Omar Aikens, appeals from a final agency decision by the Department of Corrections (DOC) denying his request for a reduction in custody status from Gang Minimum to Full Minimum. With that reduced status, Aikens could work outside the main prison with minimal supervision. N.J.A.C. 10A:9-4.3(e). Applying the relevant legal principles to the record before us, and despite the deferential standard of review we apply to DOC inmate classification decisions, we are constrained to remand the case for DOC to reconsider its decision in view of all relevant factors.

I.

Aikens is presently serving a term of imprisonment at South Woods State Prison based on convictions for two separate criminal episodes. In 2002, Aikens rented a hotel room with several other men and had sex with a 13-year-old girl and a 14-year-old girl. He was subsequently convicted of endangering the welfare of a child, N.J.S.A. 2C:24-4(a). In 2005, Aikens was involved in the shooting death of a young man in Trenton. The victim had been shot once in the head and twice in the back. Aikens was convicted of aggravated manslaughter, N.J.S.A. 2C:11-4. He was sentenced on these convictions to an aggregate term of imprisonment of eighteen years and six months, with a fifteen-year, eight-month and twenty-day period of parole ineligibility.

A-4963-17T3

The South Woods Institutional Classification Committee (ICC) voted 5-0 to reject Aikens's request for a reduction in custody status. On the DOC form used to record the reasons for denying an inmate's application, all five ICC members wrote out by hand essentially the same phrase: "Field account of present offense – extreme level of violence used in the commission of the crime."[1]

The day after the ICC vote, Aikens submitted an Inmate Inquiry seeking to appeal ICC's decision. The next day, DOC tendered the following response to Aikens' inquiry:

> Per 10A:9-4.2 No right to reduced custody. A reduction in custody status is a privilege and not a right. In addition per 10A:9-4.5 Discretion of the Institutional Classification Committee: In making decisions to

---

[1] The DOC form is captioned "<u>FINAL APPROVAL FOR REDUCED CUSTODY (FM)</u> REASON FOR 'NO' VOTE." We note the form's caption refers to "reason" in the singular and its layout design provides each member only a small box in which to record that reason. These features would seem to encourage ICC members to record a single reason for their vote to deny an inmate's request for a reduction in custody status, even though N.J.A.C. 10A:9-4.5(a) expressly requires an ICC to consider all relevant factors. We do not regard this form as some kind of rule exemption that authorizes ICC members to consider a single circumstance. No doubt the form was developed to make it easier for ICC members to record their findings. Reliance upon this form can be counterproductive, however, to the extent it allows if not invites ICC members to provide an incomplete and thus inadequate memorialization of the reasons for denying an inmate's application.

We also note the ICC members all referred to a single crime even though Aikens was convicted of two distinct offenses.

A-4963-17T3

> reduce an inmate's custody status the ICC shall take into consideration all relevant factors. <u>In your case, extreme level of violence used in the commission of the present offense.</u> The Committee will see you again next year 6/19, for FM consideration.
>
> [(Emphasis added).]

The Department's response to Aikens's inquiry appears to confirm what we glean from our reading of the completed Final Approval form—the extreme level of violence used in the commission of the offense was the only circumstance the agency explicitly considered in denying Aikens's request for reduced custody status. We are skeptical, to say the least, that this was the only relevant circumstance bearing on his current custody status, especially given the length of time Aikens has been imprisoned. We surmise he has a substantial and possibly evolving record of institutional conduct, positive or negative, as reflected, for example, in his objective classification score. <u>See</u> <u>infra</u> note 3. We therefore remand for the agency to consider such other pertinent factors or else explain why no other circumstances are relevant.

## II.

In reaching our conclusion, we acknowledge the legal principles we must apply, including the deference we owe to administrative agencies in general and to the DOC in particular. "The judicial capacity to review administrative agency

A-4963-17T3

decisions is limited." Brady v. Bd. of Review, 152 N.J. 197, 210 (1997). As a general matter, we will "intervene only in those rare circumstances in which an agency action is clearly inconsistent with its statutory mission or with other State policy." George Harms Constr. Co. v. N.J. Tpk. Auth., 137 N.J. 8, 27 (1994). We may disturb a final agency action only if it is arbitrary, capricious, or unreasonable. Brady, 152 N.J. at 210.

We defer to administrative agencies in recognition of their "expertise and superior knowledge of a particular field." Greenwood v. State Police Training Ctr., 127 N.J. 500, 513 (1992) (citing Clowes v. Terminix Int'l, 109 N.J. 575, 587 (1988)). In our review of DOC's and the Commissioner's exercise of their authority, we must acknowledge "[t]he breadth and importance of the Commissioner's expertise and discretionary authority in matters of prison policy, regulation and administration." Ortiz v. N.J. Dep't of Corr., 406 N.J. Super. 63, 70 (App. Div. 2009).

The Commissioner of Corrections has "complete discretion," moreover, to determine an inmate's placement and custody status. Smith v. N.J. Dep't of Corr., 346 N.J. Super. 24, 29 (App. Div. 2001) (citing N.J.S.A. 30:4-91.2). In exercise of that discretion, the Commissioner has delegated his authority to the ICC and prison administrators. Id. at 29, 33. However, although the ICC

A-4963-17T3

exercises the Commissioner's powers in this area, "the Department of Corrections did not intend to give the Superintendent and Institutional Classification Committee unbridled discretion to make [the] determination" whether to grant full minimum custody status. Id. 32–33. Rather, the ICC and Superintendent are obligated to "consider all of the factors pertinent to [the inmate's] status." Id. at 32.

Indeed, the DOC response to Aikens's inquiry correctly acknowledges that the ICC was required to consider all relevant factors. DOC in its appellate brief likewise acknowledges that N.J.A.C. 10A:9-4.5(a) expressly provides that when considering whether to change an inmate's custody status, an ICC must consider "all relevant factors."

N.J.A.C. 10A:9-4.5(a) provides a list of potentially relevant factors, which "may include, but are not limited to" the following:

(1)  Field account of the present offense;

(2) Prior criminal record;

(3) Previous incarcerations;

(4) Correctional facility adjustment;

(5) Residential community program adjustment;

(6) The objective classification score;

(7) Reports from professional and custody staff;

(8) A conviction for a present or prior offense that resulted in a life sentence; and

(9) Any reason which, in the opinion of the Administrator and the I.C.C., relates to the best interests of the inmate or the safe, orderly operation of the correctional facility or the safety of the community or public at large.

In addition, N.J.A.C. 10A:9-3.3(a) requires the ICC to make decisions regarding an inmate's custody status based on the following twenty-three factors:

(1) The objective classification scoring results (excluding inmates committed to A.D.T.C.);

(2) Needs and interests expressed by inmate;

(3) Age;

(4) Family status;

(5) Social contacts with family and friends;

(6) Correctional facility adjustment;

(7) Residential community program adjustment;

(8) Educational history and needs;

(9) Vocational history and needs;

(10) Military history;

7

(11) Nature and circumstance of present offense;

(12) Prior offense record;

(13) Records from previous confinement;

(14) Detainers on file or pending;

(15) Substance dependency and/or involvement;

(16) Sexual adjustment;

(17) History of escape, attempted escape or propensity for escape;

(18) Current psychological and/or psychiatric reports;

(19) Medical history and recommendations;

(20) Arson history;

(21) A conviction for any offense that resulted in a life sentence when one or more of the following aggravating circumstances are in the inmate's present or prior offense history . . .

(22) Needs of the correctional facility; and/or

(23) Any other factor pertinent to the inmate's case.

## III.

So far as we are aware, the Commissioner has not exempted the ICC from considering all relevant factors set forth in N.J.S.A. 10A:9-3.3 and N.J.A.C. 10A:9-4.5. See supra note 1. We therefore would expect the record before us

to show compliance with the requirement to consider all relevant circumstances. It does not. To the contrary, as we have noted, the record shows only that the ICC considered the "[f]ield account of the present offense," N.J.A.C. 10A:9-4.5(a)(1), and the "[n]ature and circumstance of present offense." N.J.A.C. 10A:9-3.3(a)(11). The record does not show that the ICC considered other circumstances that plainly appear to be relevant, including, for example, the inmate's objective classification score, which in this case was two.[2]

To ensure compliance with the obligation to consider all relevant factors, ICC members must clearly state which factors they considered, and which ones helped to tip the scales for or against custody status reduction. This requirement is premised on the well-settled principle that an agency decision must clearly state its reasoning and conclusion. Put another way, an agency must show its work so that a reviewing court can understand how the agency came to its conclusion. See Balagun v. N.J Dep't of Corr., 361 N.J. Super. 199, 202–03

---

[2] Both N.J.A.C. 10A:9-4.5(a)(6) and N.J.A.C. 10A:9-3.3(a)(1) list the objective classification score as a relevant factor. In this instance, the Reclassification Instrument indicates a total score of 2. Six points were awarded based upon the "severity of the current offense." Two points were subtracted based on "number of disciplinary reports." Another two points were subtracted based on "program participation – last 12 months." The record does not show that the ICC members considered either the classification score or the two scored mitigating circumstances relating to Aikens's recent institutional performance.

A-4963-17T3

(App. Div. 2003) ("We cannot accept without question an agency's conclusory statements, even when they represent an exercise in agency expertise. The agency is 'obliged . . . "to tell us why."'" (quoting <u>In re Valley Hosp.</u>, 240 N.J. Super. 301, 307 (App. Div. 1990))).

Although we apply a highly deferential standard of review of DOC's exercise of discretion in classifying inmates, that deference presupposes that the agency has complied with its own rules for exercising its discretion. <u>See Cty. of Hudson v. N.J. Dep't of Corr.</u>, 152 N.J. 60, 70 (1997) ("[A]n administrative agency ordinarily must enforce and adhere to, and may not disregard, the regulations it has promulgated." (citing <u>In re Waterfront Dev. Permit</u>, 244 N.J. Super. 426, 434 (App. Div. 1990))). In this instance, we are constrained to conclude that the agency violated its own policy as set forth in the governing regulations, leading us to further conclude that the decision in this case was unreasonable in the literal sense that it was not based on all pertinent reasons.

IV.

In reaching this conclusion, we appreciate DOC's contention in its brief that the violent and impulsive nature of the crimes for which Aikens was convicted support the decision that he should remain inside the security perimeter of the prison under frequent and direct supervision of custody staff.

A-4963-17T3

To be clear, we do not doubt that the level of violence associated with those crimes is a relevant factor to which the ICC, in its broad discretion, might ascribe significant weight. It is within the ICC's prerogative, in other words, to conclude that the level of violence of those crimes tips the scales against all other relevant circumstances that it considered. The point, however, is that Aikens's past level of violence is not the only relevant circumstance that the ICC was required to consider under the regulatory decision-making framework that channels its discretion. It seems implausible to us that none of the other factors listed in N.J.A.C. 10A:9-4.5 or N.J.A.C. 10A:9-3.3 are pertinent to Aikens's suitability for Full Minimum custody status. It therefore is incumbent on the ICC to explain how any other pertinent circumstances were considered in relation to the level of violence employed during the crimes for which Aikens is presently incarcerated.

V.

In sum, we remand for reconsideration by the ICC of the correctional institution where Aikens is now assigned. It shall consider all pertinent factors set forth in the regulations and shall document its reasoning so as to allow for and facilitate further appellate review, if needed.

Remanded. The ICC shall issue a new decision within 30 days. Any subsequent review by the appropriate administrator and Central Office shall be completed within an additional 30 days thereafter. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION