**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3011-17T2

CARON ROMANS,

     Appellant,

v.

NEW JERSEY DEPARTMENT
OF CORRECTIONS,

     Respondent.

_____

Submitted November 12, 2019 – Decided March 3, 2020

Before Judges Vernoia and Susswein.

On appeal from the New Jersey Department of Corrections.

Caron Romans, appellant pro se.

Gurbir S. Grewal, Attorney General, attorney for respondent (Jane C. Schuster, Assistant Attorney General, of counsel; Suzanne Marie Davies, Deputy Attorney General, on the brief).

PER CURIAM

Appellant, Caron Romans, is a state prison inmate serving a fifteen-year sentence for armed burglary, terroristic threats, and theft. He appeals from a final agency decision by the Department of Corrections (DOC) denying his request to be transferred to a residential community-release program (RCRP), colloquially known as a halfway house. His application was initially approved by both the Institutional Classification Committee (ICC) and the prison administrator of the institution at which he was housed. The Office of Community Programs and Outreach Services (OCPOS) intervened, however, and denied the transfer based on Romans's classification file and the nature and details of his offense.

The gravamen of Romans's appeal is that OCPOS has no authority to overrule the ICC. Romans contends that pursuant to regulations duly promulgated by the Commissioner, the ICC has exclusive authority to determine whether inmates will be admitted to an RCRP. Although Romans's interpretation of the applicable regulations is correct, we are constrained to reject his argument in view of a rule exemption from N.J.A.C. 10A:20-4.5 granted by the Commissioner. That exemption changed the approval procedures and gave OCPOS authority to deny Romans's application to the RCRP.

A-3011-17T2

The decision where to place an inmate is left to the discretion of the DOC Commissioner or his designee. The Commissioner has broad discretion not only in deciding whether to place an inmate in a community-based program but also in choosing a designee to make that decision in the Commissioner's stead. In this instance, by granting an exemption from the approval process otherwise specified in the regulation, the Commissioner lawfully exercised his authority to add another layer of review and delegate to OCPOS the responsibility to ensure that only appropriate candidates are admitted to an RCRP. We therefore reject Romans's contention that DOC acted arbitrarily, capriciously, and unreasonably in denying his admission into the program.

I.

As we have already noted, Romans's application was initially approved by the ICC and prison administrator, but ultimately the OCPOS denied it. Romans appealed from that final agency decision. DOC requested the case be remanded so that it could reconsider the denial of Romans's application. We granted DOC's motion, remanded the case, and retained jurisdiction.

DOC apparently recognized that the procedure it had followed in this case did not comport with the review and approval/denial process set forth in its regulations. The DOC Commissioner thereupon issued the rule exemption,

3

creating another layer of review and delegating to OCPOS the authority to approve or deny applications for transfer to a halfway house. DOC asserts the rule exemption was necessary to ensure that inmates placed in community-based residential programs do not pose an undue risk to public safety. DOC now relies on that rule exemption to justify post hoc[1] the final agency decision that had already been made to deny Romans's application. Having retained jurisdiction, the case now returns to us for decision.

## II.

Romans, appearing pro se, presents the following contention for our consideration:

> THE RESPONDENT[']S ACTIONS (DENIAL OF PETITIONER[']S HALFWAY HOUSE APPLICATION) WERE OUTSIDE OF THEIR ROLE AS DEFINED IN [N.J.A.C.]10A:20-4.12, AS THEY ARE REQUIRED TO FORWARD I.C.C.

---

[1] We note that the retroactive application of the rule exemption in no way implicates the prohibition against ex post facto laws. The alteration of the administrative review process in this case did not "impose[] additional punishment to an already completed crime." Riley v. N.J. State Parole Bd., 219 N.J. 270, 285 (2014) (citing Kansas v. Hendricks, 521 U.S. 346, 370 (1997)). A change in custody status generally does not implicate the Due Process Clause, Sandin v. Conner, 515 U.S. 472, 486 (1995) (limiting due process liberty interests to freedom from a restraint imposing an atypical, significant hardship in relation to the ordinary incidents of prison life), and absent punitive intent, "the Ex Post Facto Clause does not bar a prison from changing the regulations governing their internal classification of prisoners," Dyke v. Meachum, 785 F.2d 267, 268 (10th Cir. 1986).

APPROVALS AND PREPARE TRANSFERS TO THE ASSESSMENT CENTERS UNLESS AN APPLICANT WAS CONVICTED OF AN OFFENSE ENUMERATED IN N.J.S.A. 30:4-91.8, OF WHICH THE APPELLANT WAS NOT. OTHERWISE THE I.C.C. APPROVES/DISAPPROVES APPLICANTS AND THE OFFICE OF COMMUNITY PROGRAMS FORWARDS APPROPRIATE DOCUMENTS TO ASSESSMENT CENTERS.

## III.

We begin our analysis by acknowledging the legal principles we must apply, including the deference we owe to administrative agencies in general and to the DOC Commissioner in particular. "The judicial capacity to review administrative agency decisions is limited." Brady v. Bd. of Review, 152 N.J. 197, 210 (1997). As a general matter, we will "intervene only in those rare circumstances in which an agency action is clearly inconsistent with its statutory mission or with other State policy." George Harms Constr. Co. v. N.J. Tpk. Auth., 137 N.J. 8, 27 (1994). We may disturb a final agency action only if it is arbitrary, capricious, or unreasonable. Brady, 152 N.J. at 210

We defer to administrative agencies in recognition of their "expertise and superior knowledge of a particular field." Greenwood v. State Police Training Ctr., 127 N.J. 500, 513 (1992) (citing Clowes v. Terminix Int'l, 109 N.J. 575, 587 (1988)). Such deference certainly applies to decisions made by the DOC

Commissioner given "[t]he breadth and importance of the Commissioner's expertise and discretionary authority in matters of prison policy, regulation and administration." Ortiz v. N.J. Dep't of Corr., 406 N.J. Super. 63, 70 (App. Div. 2009).

Furthermore, an inmate does not have a constitutionally protected liberty interest in his or her custody status or housing assignment. Meachum v. Fano, 427 U.S. 215, 224–225 (1976); see also White v. Fauver, 219 N.J. Super. 170, 180 (App. Div. 1987) (noting an inmate has no constitutionally protected interest in reduced-custody status). We have long recognized, in this regard, that because inmates are sentenced to state prison, not to any particular institution or program, they may be transferred by administrative action. Rocca v. Groomes, 144 N.J. Super. 213, 215 (App. Div. 1976). Indeed, the Commissioner "has complete discretion in determining an inmate's place of confinement, N.J.S.A. 30:4-91.2." Smith v. N.J. Dep't of Corr., 346 N.J. Super. 24, 29 (App. Div. 2001).

The Commissioner may circumscribe that discretion, however, by adopting regulations. See id. at 33 (noting that discretion in determining whether to grant reduced-custody status is guided by N.J.A.C. 10A:9-3.3(a)). As a general matter, "an administrative agency ordinarily must enforce and

adhere to, and may not disregard, the regulations it has promulgated." Cnty. of Hudson v. N.J. Dep't of Corr., 152 N.J. 60, 70 (1997) (citing In re Waterfront Dev. Permit, 244 N.J. Super. 426, 434 (App. Div. 1990)). However, an agency may expressly reserve unto itself the power to waive a regulation. In re CAFRA Permit No. 87-0959-5, 152 N.J. 287, 308 (1997) ("[A]n agency that seeks the power to waive its substantive regulations should adopt a regulation pertaining to any such waiver . . . .").

## IV.

We turn next to the specific regulations governing the administration of an RCRP. N.J.A.C. 10A:20-4.5(b)(1) provides that eligibility and suitability for assignment to an RCRP "is determined by the Commissioner or designee." Although decision-making authority thus rests ultimately with the Commissioner, the question presented to us in this appeal is to whom the Commissioner delegated this authority within the agency's organizational structure.

In its present form, N.J.A.C. 10A:20-4.10(a) vests the ICC with the authority to approve or deny an inmate's assignment to a residential program.[2]

_____

[2] DOC does not dispute that the administrative code, as currently written, does not grant OCPOS the authority to render final agency decisions regarding

This delegation is consistent with the general procedures relating to the classification of inmates. See Shabazz v. N.J. Dep't of Corr., 385 N.J. Super. 117, 122 n.1 (App. Div. 2006) ("Decisions as to custody status . . . are made by the Institutional Classification Committee." (citing N.J.A.C. 10A:9-3.3(a))); see also Jenkins v. Fauver, 108 N.J. 239, 245 (1987) (noting a prior Departmental standard vested in the ICC "sole authority to reduce or increase an inmate's custody status"); Smith, 346 N.J. Super. at 31 (noting that a Department brief "explain[ed] that 'custody status' decisions are made by the Institutional Classification Committee").

The text of the current regulations suggest that the role of the OCPOS is to administer the process of transferring the inmate to an appropriate program, rather than deciding whether to admit the inmate into a program. See N.J.A.C. 10A:20-4.12 (requiring the OCPOS to prepare transfer orders, maintain waiting lists, and assign inmates to Assessment and Treatment Centers); see also N.J.A.C. 10A:20-4.2(a) (imposing upon OCPOS the responsibility "for the administration, monitoring, and oversight" of RCRPs).

community-release applications. DOC's brief informs us that the Department is currently in the process of amending its regulations to grant such authority.

It bears noting, however, the current regulations also assign to OCPOS the authority to "select the program assignment for . . . inmate[s] approved by the [ICC] for participation in a residential community program."  N.J.A.C. 10A:20-4.8(g).  In other words, although the current regulations do not authorize OCPOS to make final admission and denial decisions, that office clearly plays an important role in the placement process.

The text of the current regulations must be read in conjunction with the rule exemption, which provides that OCPOS reviews any approved applications from the ICC.  This provides enhanced checks and balances ensuring both consistency and public safety.  The rule exemption clearly was intended to make OCPOS the Commissioner's designee for purposes of determining whether an inmate should be admitted into the halfway-house program.  We discern no legal impediment to the Commissioner exercising his discretion by delegating this task to OCPOS, especially given its experience and expertise in overseeing community-based release programs.  In sum, we do not read the statute or regulations as prohibiting OCPOS from acting as the Commissioner's designee pursuant to a duly issued rule exemption.

In reaching this conclusion, and in deferring to the Commissioner's prerogative in selecting a designee best suited to identify appropriate candidates

9

for placement in halfway houses, we are mindful of concerted efforts by the Executive Branch to facilitate successful prison reentry as a means of enhancing public safety[3] and promoting social justice. Halfway houses and other community-based residential programs are an important part of the inmate reentry and reintegration process, providing an intermediate step between imprisonment and parole. The DOC Commissioner has a keen interest not only in ensuring public safety, but also in enhancing public confidence in these vital programs. Adding another layer of administrative review to the application and approval process, therefore, seems an appropriate exercise of the Commissioner's discretion, one that cannot be characterized as arbitrary, capricious, or unreasonable. Brady, 152 N.J. at 210.

Any contentions raised by Romans that we have not addressed lack sufficient merit to warrant discussion in this written opinion. R. 2:11-3(e)(1)(E).

We emphasize that our ruling presupposes that the decision to deny Romans's placement in a halfway house is not final and immutable. See Smith, 346 N.J. Super. at 31–32 (basing, in part, an affirmance of a decision to deny an inmate's application for reduced custody status upon the opportunity for

---

[3] The regulations clearly provide that candidates for participation in residential release programs shall "[n]ot demonstrate an undue risk to public safety." N.J.A.C. 10A:20-4.4(a)(2).

continuous review of the inmate's custody status).  DOC in its brief assures us that it will continue to review Romans's custody status and housing assignment. Based on that assurance, we affirm the agency decision to deny him admission to the RCRP.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION